**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CONNIE SUE SUMMERLIN, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:12 –cv – 00007 (WWE) |
| | : | |
| VS. | : | |
| | : | |
| ALMOST FAMILY, INC., | : | |
| Defendant. | : | FEBRUARY 11, 2015 |

**PLAINTIFF'S TRIAL MEMORANDUM**

(1)    <u>BRIEF SUMMARY OF CASE</u>

Connie Sue Summerlin is a registered nurse licensed by the state of Connecticut to provide

professional nursing services.  She graduated from Samford University in Birmingham, Alabama

in 1977, with an associate's degree in nursing.  Ms. Summerlin possesses in excess of thirty

years of professional nursing experience.  Almost Family, Almost Family, Inc., hired Ms.

Summerlin in October of 2006 as a per diem nurse assigned to the Almost Family's patient care

division.  In 2009, Almost Family offered and Ms. Summerlin accepted a full time position as a

behavioral health nurse case manager.  In February of 2010, Ms. Summerlin fell on ice, injuring

her hip, while outside of a patient's home.  Ms. Summerlin exacerbated her injury on April 8,

2010, when during the course of her employment with Almost Family, she lifted a leaded

lockbox in which Almost Family's medications for its patients are stored.  When Ms. Summerlin

suffered her injury on April 8, 2010, she was working for Almost Family as a full-time

Registered Nurse Case Manager in its Patient Care division.  The injury on April 8, 2010, caused

Ms. Summerlin to be temporarily totally disabled from work through February 14, 2011, when

1

she was released by her health care provider to return to work on a light duty status. Thereafter, Ms. Summerlin was released by her health care provider to return to work without restriction effective March 8, 2011. Ms. Summerlin's injury was covered under the provisions of the Connecticut Workers' Compensation Act, and she received workers' compensation for the period from April 8, 2010, through March 8, 2011. While out on workers' compensation, Almost Family deducted Ms. Summerlin's time off from work from the 12 weeks of leave to which she was entitled under the Family and Medical Leave Act. Upon being released to return to work, Ms. Summerlin contacted the director of Almost Family's Danbury office to inform Almost Family that she was fit to return to work, at first on a light duty basis, and shortly thereafter on a non-restricted basis. Ms. Summerlin was then informed by Almost Family, for the very first time, on February 11, 2011, that it no longer considered her to be an employee of Almost Family as of August 26, 2010, the date her leave under the Family and Medical Leave Act had expired. Upon learning that she was no longer considered by Almost Family to be employed by it, Ms. Summerlin immediately sought new employment with Almost Family. Commencing on February 14, 2011, Ms. Summerlin applied for various vacant professional nursing positions for which Almost Family was seeking applicants and for which Ms. Summerlin was qualified. After Ms. Summerlin was notified by Almost Family that she was no longer considered an employee of Almost Family, a human resource representative of Almost Family informed Ms. Summerlin that there were full time vacancies for which she should make application on line through Almost Family's job portal. Ms. Summerlin then applied online for various positions, both full time and part time. Almost Family, without ever providing her a

2

reason for its action, did not hire Ms. Summerlin to any of these positions except for a part time per diem job.  On the February 14, 2011, when Ms. Summerlin applied for the various full time positions, she also applied for the "per diem" position of Behavioral Health Registered Nurse – PRN.  Although Almost Family informed Ms. Summerlin that she had been hired to this part time position of Behavioral Health Registered Nurse – PRN, Ms. Summerlin claims that she was only provided one weekend assignment between March of 2011, and the present date.  Ms. Summerlin continued to seek full time employment from Almost Family subsequent to February 14, 2011.  On December 1, 2011, Ms. Summerlin applied for the full time position of Psych RN-Home Care – FT, which was a posted position on Almost Family's job portal, along with several other positions.  Not only did Almost Family not hire Ms. Summerlin for the position of Psych RN-Home Care – FT, it never provided her with its reasons for not hiring her, other than to state that it had hired someone else.  On December 5, 2011, Ms. Summerlin also applied for the full time position of Registered Nurse – Home Health – Full Time – Case Management, which was another posted position on Almost Family's job portal.  Almost Family did not hire Ms. Summerlin for the position of Registered Nurse – Home Health – Full Time – Case Management, nor did it inform her of it non-hiring decision, or the reason or reasons for not hiring Ms. Summerlin.

Immediately prior to being refused employment by Almost Family, Ms. Summerlin had been out of work as a result of a work related injury.  Ms. Summerlin exercised her rights under the Connecticut Workers' Compensation Act, and received injury leave, medical treatment and workers' compensation benefits.  The injury leave taken by Ms. Summerlin was designated by

Almost Family as medical leave covered by the provisions of the Family and Medical Leave Act. Ms. Summerlin's leave under the Family and Medical Leave Act, by Almost Family's calculations, expired on August 26, 2010, when Almost Family asserts it terminated Ms. Summerlin's employment, even though it did not inform Ms. Summerlin of her termination until February 11, 2011. It was only when Ms. Summerlin signified her ability to return to work, that Almost Family told Ms. Summerlin of her firing. Although applying for at least eight positions, five of which were full time positions, with Almost Family after February 11, 2010, Ms. Summerlin was never informed by Almost Family of the reason that she had been refused reemployment, other than that someone else was selected or you were not "selected as a finalist." Almost Family never informed Ms. Summerlin that any of her applications were rejected on the basis that she was not qualified for the position. Almost Family never informed Ms. Summerlin, prior to this lawsuit, that she was not qualified for any of the positions to which she applied. Further, Almost Family never informed Ms. Summerlin that any of her applications were rejected because she had informed it that she did not want assignments involving patients with medical needs. Almost Family never informed Ms. Summerlin that it had rejected any of her job applications on the basis that she had refused to accept per diem assignments which were offered to her by Almost Family. At the same time that Ms. Summerlin allegedly informed Almost Family that she would not accept a position that involved patients' medical needs, Ms. Summerlin applied for various positions that involved the medical needs of patients.

Ms. Summerlin asserts that Almost Family refused to hire her to any of the positions to which she applied, except for the part-time per diem job, in retaliation for her exercising her rights under the Connecticut Workers' Compensation Act, and the Family and Medical Leave Act.

(2)    <u>PROPOSED VOIR DIRE</u>

1.  Ms. Summerlin claims that Almost Family discriminated and/or retaliated against her by not rehiring her because she had exercised the rights afforded to her pursuant to the provisions of the Connecticut Workers' Compensation Act.  Ms. Summerlin also claims that Almost Family discriminated and/or retaliated against her by not rehiring her because she had exercised the rights afforded to her pursuant to the provisions of the Family and Medical Leave Act.  Is there any reason why you would have difficulty being completely neutral and fair in deciding this case if you are chosen to serve on the jury?

2.  Does anyone feel for any reason that a person who believes to have been discriminated against and treated unfairly should not bring a lawsuit against his or her employer?  If so, please explain.

3.  Does anyone feel that he or she could not follow the law on discrimination and retaliation in the workplace, as instructed by the Court?

4.  Has anyone here ever been involved in any way with a claim involving discrimination and/or retaliation?  If so, please explain.

5.  Have you or anyone close to you ever been employed by Almost Family, Inc.?

6.  Would any of you tend to give greater weight to the statements of an employer simply

because it is the employer?

7.  Have you or anyone else close to you ever been accused of treating an employee unfairly?  If so, please explain.

8.  Do you or anyone close to you own a business or company?  If so, have you or that other person ever been sued or had a complaint filed against you or the other person by someone who claimed he or she had not been subjected to discrimination or retaliation of any sort?  If so, please explain.

9.  Have you ever been accused of treating a subordinate employee unfairly?

10. Have you ever accused your employer of treating you unfairly?

11. Do you have any responsibility for hiring, promoting, or terminating other employees? Please explain.

12. Do you feel that your work experience or the work experience of your spouse or any member of your family will have any bearing on your decision in this case?  If yes, please explain.

13. Have you heard of the events which give rise to this lawsuit at any time before today?  If so, please explain.

14. Have you, your spouse, or any member of your immediate family, or any personal friend ever felt or believed that you or they were mistreated by your/their employer?  If so, please explain.

15. Do you believe that people can be injured by being discriminated or retaliated against in the workplace?

6

16. Would you have any reservations in awarding monetary damages for emotional distress?

17. Have you or any member of your family or anyone close to you ever been terminated or denied a job opportunity?

18. If the answer to the foregoing question is yes, do you feel that you/such person was treated unfairly, and if so, why?

19. Do you feel that the treatment by that employer might affect your ability to judge this case fairly and impartially, and if so, in what way?

20. Have you, or any member of your family or anyone close to you, ever filed a complaint or lawsuit against your/his/her employer or been involved, as a party or a witness, in a lawsuit against an employer?

21. If the answer to the foregoing question is yes, what was the nature and circumstances of the complaint?

22. Do you think that your experience regarding the complaint and its result might affect your ability to judge this case fairly, and if so, in what way?

23. Have you, or any member of your family or anyone close to you ever sued or been sued in a lawsuit?  If so, please provide details and state whether this might affect your ability to judge this case fairly and, if so, in what way.

24. Have you, or any member of your family, ever been the subject of a complaint which involved an allegation that you or a member of your family had discriminated against another individual?

7

(3)    <u>LIST OF WITNESSES</u>

Plaintiff's Witnesses

| Name and Address of Witness | Anticipated Testimony |
|---|---|
| Connie Sue Summerlin, 11 Whisconier Road, Brookfield, CT 06804 | Connie Sue Summerlin, the plaintiff in this action, will testify about her employment with the defendant, her workplace injury, the exercise of her rights under the Connecticut Workers' Compensation Act, and the Family and Medical Leave Act, the termination of her employment with the defendant, and her attempts to obtain reemployment with the defendant, including the positions for which she submitted applications. Ms. Summerlin will testify about her educational background, her professional background, and her employment history. Further, Ms. Summerlin will offer testimony about the damages, both monetarily, and emotionally, which she suffered when the defendant refuse to hire her to any of the positions for which she submitted job applications. |
| Kelly Federle, 236 Aspetuck Ridge, New Milford, CT 06776 | Kelly Federle, a former employee of the defendant, will be called as an adverse witness and will be asked to testify concerning the plaintiff's employment with the defendant, the circumstances surrounding the termination of the plaintiff's employment with the defendant, and the plaintiff's attempts to seek reemployment with the defendant. |
| Stacey Bickford, 40A Fordyce Road, New Milford, CT 06776 | Stacey Bickford, a former employee of the defendant, will be called as an adverse witness and will be asked to testify concerning the plaintiff's employment with the defendant. |
| Margaret Miller, 14 Kilian Drive, Danbury, CT 06811 | Margaret Miller, a former employee of the defendant, will be called as an adverse witness and will be asked to testify concerning the plaintiff's employment with the defendant. |
| Margaret Palicios, address currently unknown. | Margaret Palicios, a former employee of the defendant, will be called as an adverse witness and will be asked to testify concerning the plaintiff's employment with the defendant. |
| Sarah Adler, 11 Whisconier Road, Brookfield, CT 06804 | Sarah Adler, the plaintiff's daughter, will testify concerning the emotional stress she witnessed the plaintiff suffering when her |

8

|  | applications for reemployment with the defendant were rejected and/or ignored by the defendant. |
|---|---|

    (4)    <u>LIST OF EXHIBITS</u>

In addition to the exhibits identified by the defendant, the plaintiff may rely on the following

exhibits at trial:

| Exhibit | Description | AFAM's Bates Nos. |
|---|---|---|
| 1 | Professional/Administrative Interview Documentation re Connie Sue Adler | 0034 |
| 2 | Letter dated September 20, 2006from Jamie Hanley, RN to the plaintiff | 0056 |
| 3 | Job Description – Behavioral Health Care Nurse | 0069 – 0070 |
| 4 | Personnel Status Form dated October 6, 2006 | 0133 |
| 5 | Orientation and Annual Field Competency Registered Nurse | 0148 – 0149 |
| 6 | Performance Evaluation from 9/29/06 to 9/29/07 | 0139 – 0141 |
| 7 | Performance Evaluation from 9/29/07 to 9/29/08 | 0144 – 0147 |
| 8 | Personnel Action Form dated 12-3-09 | 0018 |
| 9 | Employee Incident Report dated 4/9/10 | 0002 |
| 10 | State of Connecticut Workers' Compensation Commission Employer's First Report of Occupational Injury or Illness dated 4/9/10 | 0003 |
| 11 | Email from Kelly Federle to Mark Sutton dated February 8, 2011, Subject Connie Summerlin | 0014 |

| 12 | Series of Emails between Kelly Federle and Mark Sutton, dated February 8, 2011, Subject Connie Summerlin | 0015 |
|----|-------------------------------------------------------------------------------------------------------------|------|
| 13 | Series of Emails between Kelly Federle and Stephanie Lush, dated February 8, 2011 | 0016 – 0017 |
| 14 | Contemporaneous Notes of Connie Sue Summerlin | N/A |
| 15 | Selection and Hiring Practices | 0382 – 383 |
| 16 | Summerlin Application for Position of Registered Nurse – Home Health – PRN | 0263 – 0271 |
| 17 | Summerlin Application for Position of Registered Nurse – Home Health – Full Time – Case Management | 0272-0278 |
| 18 | Summerlin Application for Position of Psych RN – Home Care – FT | 0279 – 0287 |
| 19 | Summerlin Application for Position of Behavioral Health Registered Nurse – PRN | 0288 – 0293 |
| 20 | Summerlin Application for Position of Behavioral Health Registered Nurse – PRN | 0294 – 0299 |
| 21 | Summerlin Application for Position of Behavioral Health Case Manager – RN | 0300 – 0305 |
| 22 | Summerlin Application for Position of HHA Manager/RN Manager | 0306 – 0311 |
| 23 | Summerlin Application for Position of Patient Care Liaison – Registered Nurse (RN) Required | 0312 – 0318 |
| 24 | Summerlin Application for Position of Behavioral Health Registered Nurse | 0319 – 0322 |
| 25 | Summary of Plaintiff's Job Applications with Almost Family, Inc. | 0261 |

| 26 | Summary of Positions to which Plaintiff Applied | 0262 |
| 27 | Job Description – Registered Nurse – Behavioral Health | 0386 – 0387 |
| 28 | Job Description – Registered Nurse (RN) | 0391 |
| 29 | Job Description – Patient Care Liaison | 0388 – 0390 |
| 30 | Email from hodes to Connie Summerlin – Declining to Hire the Plaintiff to Position of Psych RN – Home Care – FT, dated January 23, 2012 | N/A |
| 31 | Email from hodes to Connie Summerlin – Rejecting Plaintiff for Employment Consideration as a Registered Nurse – Home Health – PRN, dated April 4, 2012 | N/A |
| 32 | Personnel Action Form dated March 26, 2011 | 0001 |
| 33 | Behavioral Health Weekend Schedule for May 14, 15, 2011 | N/A |
| 34 | Home Health Certification and Plan of Care Dated 12/29/2009 | N/A |
| 35 | Home Health Certification and Plan of Care dated 3/1/2010 | N/A |
| 36 | Patient Care Instructions re Intensive Insulin Therapy Algorithm dated 2/26/09 | N/A |
| 37 | Home Health Certification and Plan of Care dated 10/14/09 | N/A |
| 38 | Home Health Certification and Plan of Care dated 8/30/09 | N/A |
| 39 | Patient Care Instructions dated 2/8/10 | N/A |
| 40 | Referral Form dated 1/22/10 | N/A |

| 41 | Referral Form dated 2/25/10 | N/A |
|----|------------------------------|-----|
| 42 | Form W-2 for Tax Year 2009 Issued by Almost Family, Inc. | N/A |
| 43 | Form W-2 for Tax Year 2009 Issued by Caretenders Visiting Services Employment Inc. | N/A |
| 44 | Form W-2 for Tax Year 2010 Issued by Almost Family, Inc. | N/A |
| 45 | Form W-2 for Tax Year 2011 Issued by Almost Family, Inc. | N/A |
| 46 | Form W-2 for Tax Year 2011 Issued by Family Care Visiting Nurse and Home Care | N/A |
| 47 | Form W-2 for Tax Year 2012 Issued by Family Care Visiting Nurse and Home Care | N/A |
| 48 | Form W-2 for Tax Year 2013 Issued by Family Care Visiting Nurse and Home Care | N/A |
| 49 | Transcript of the Deposition of Kelly Federle | N/A |

The plaintiff reserves the right to use any and all exhibits identified and marked by the

defendant.  The plaintiff further reserves the right to present documents at trial, not listed above,

for rebuttal and impeachment purposes.

(5)    DEPOSITION DESIGNATIONS AND CROSS-DESIGNATIONS

At the present time, the plaintiff does not have any designation of deposition testimony.

(6)     PROPOSED JURY INSTRUCTIONS

**PROPOSED JURY INSTRUCTION NO. 1**
**Introduction**

In this case, the plaintiff, Connie Sue Summerlin, has made a claim under the Family and

Medical Leave Act, a federal statute that entitles eligible employees to unpaid leaves of absence

for specified reasons from covered employers, and under the Connecticut Workers'

Compensation Act which provides monetary and medical benefits to employees injured while

working.  It is undisputed that Ms. Summerlin, as a result of a work related injury, was unable to

work from the date of her injury, April 8, 2010, through March 8, 2011, during which time she

was provided workers' compensation benefits under the Connecticut Workers' Compensation

Act.  Further, it is not disputed that part of her injury leave, from April 8, 2010, through August

26, 2010, was covered leave under the FMLA.  Except for a part-time, per diem position for

which she received very few assignments, Ms. Summerlin claims that after her employment was

terminated by Almost Family, Inc. when her FMLA leave expired on August 26, 2010, the

legality of which Ms. Summerlin does not dispute, Almost Family, Inc. refused to hire her to a

number of vacant positions for which she submitted applications for new employment after her

doctor had cleared her to work without restriction.  Ms. Summerlin claims that the refusal to hire

her to these positions constituted unlawful retaliation in violation of the FMLA, and the

Connecticut Workers' Compensation Act.  Almost Family denies liability, claiming that it

provided Ms. Summerlin with workers' compensation benefits, and the required FMLA leave,

13

and that it hired her to a position, albeit, a part time position.  Almost Family asserts that it lawfully hired superior qualified employees to the vacant positions to which Ms. Summerlin had applied.  The FMLA recognizes a distinct causes of action under a "retaliation" theory, whereby the employee claims that she has been discriminated against because she exercised rights or attempted to exercise rights under the FMLA.  (Model Jury Instructions, Employment Litigation, Second Edition, Comment at p. 392, and cases cited  therein; *Brungart v. Bellsouth Telecommunications*, 231 F. 3d 791 (11th Cir. 2000)).

## PROPOSED JURY INSTRUCTION NO. 2
### Elements of an FMLA Retaliation Claim

Ms. Summerlin has alleged that she has been the subject of Almost Family's retaliation because she took leave under the Family and Medical Leave Act after she was injured during the course of her employment.  In order for Ms. Summerlin to prove her claim that Almost Family retaliated against her  for taking FMLA leave, she must prove must prove, by a preponderance of the evidence, that:

1.  She engaged in FMLA protected activity by taking qualified FMLA leave.  Almost Family does not dispute, and I instruct you to find for Ms. Summerlin on this element of her proof;

2.  Almost Family did not offer Ms. Summerlin new employment, except for a part time position, to any of the various posted positions to which she applied; and

3.  A causal connection exists between the Ms. Summerlin's FMLA protected activity and  Almost Family's decision not to hire Ms. Summerlin to any of the various

14

positions, except for the part time position, to which she applied. A causal connection can be established where the alleged act of retaliation from which Ms. Summerlin claims to have suffered was the first opportunity Almost Family had to retaliate against her for taking FMLA leave. *See e.g. Pittman v. Marshall*, 2007 U.S. Dist. LEXIS 77591, 2007 WL 3049563, *7 (M.D. Ala. Oct. 18, 2007).

Although Ms. Summerlin must prove that Almost Family acted with the intent to discriminate, she is not required to prove that Almost Family acted with the particular intent to violate Ms. Summerlin's federal rights. In showing that Ms. Summerlin's taking leave was a motivating factor for Almost Family's action, Ms. Summerlin is not required to prove that the leave was the sole motivation or even the primary motivation for Almost Family's decision. Ms. Summerlin need only prove that her taking leave played a motivating part in Almost Family's decision even though other factors may also have motivated it. A motivating reason is a reason or desire that causes someone to take action. ("To succeed on a retaliation claim, Ms. Summerlin does not need to prove that retaliation was the only reason for her termination; she may establish an FMLA retaliation claim by showing that the protected conduct was a substantial or motivating factor in the employer's decision") *Goelzer v. Sheboygan County,* 604 F.3d 987 (7th Cir. 2010)(Internal quotations and citations omitted).

If you disbelieve the reason Almost Family has given for its decision not to hire Ms. Summerlin to the positions for which she submitted applications, you may, but are not required to, infer that Almost Family would not have refused to hire Ms. Summerlin to the positions to which she applied but for her FMLA-protected activity.

If you determine that Ms. Summerlin has proven each of these elements by a preponderance of the evidence, then you must find for Ms. Summerlin on her retaliation claim. If you find that Ms. Summerlin has failed to prove either of these elements by a preponderance of the evidence, then you must find for Almost Family.

AUTHORITIES

29 U.S.C. §2615(a); 29 C.F.R. §§825.216(a), 825.220. *See Hodgens v. General Dynamics Corp.*, 144 F.3d 151 (1st Cir. 1998); *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496 (4th Cir. 2001); *Chaffin v. John H. Carter Co. Inc.*, 179 F.3d 316 (5th Cir. 1999); *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309 (6th Cir. 2001); *King v. Preferred Technical Group*, 166 F.3d 887 (7th Cir. 1999); *Morgan v. Hilti, Inc.*, 108 F.3d 1319 (10th Cir. 1997); *Strickland v. Water Works and Sewer Board of the City of Birmingham*, 239 F.3d 1199 (11th Cir. 2001); *Cooke v. C. Bean Transport, Inc.*, 72 Fed. Appx. 740, 2003 WL 21662024 (10th Cir. July 16, 2003).

## PROPOSED JURY INSTRUCTION NO. 3
### Instruction Not an Indication of Entitlement to Damages

If Ms. Summerlin has proven her claim against Almost Family by a preponderance of the evidence, you must determine the damages to which Ms. Summerlin is entitled, if any. You should not interpret the fact that I have given instructions about Ms. Summerlin's damages as an indication in any way that I believe that Ms. Summerlin should, or should not, be awarded damages. It is your task first to decide whether Almost Family is liable on the specific claims presented. I am instructing you on damages only so that you will have guidance in the event you

decide that Almost Family is liable and that Ms. Summerlin is entitled to recover money from Almost Family.

*Source of Instruction:  Todd J. McNamara and J. Alfred Southerland, <u>Federal Employment Jury Instructions</u>, § 8:850 (9th rev. 2009).*

## PROPOSED JURY INSTRUCTION, NO. 4
## FMLA Damages

If you find that Ms. Summerlin has met her burden of proving by a preponderance of the evidence that she was refused employment to any of the positions to which she had applied by Almost Family because of her taking FMLA leave, then you must determine the amount of damages Ms. Summerlin suffered.

If you find that Ms. Summerlin has suffered the loss of wages, salary, employment benefits, or other compensation denied or lost to her by reason of the FMLA violation, you must determine and award the amount of such lost wages, salary, benefits or other compensation, and interest on the amount of damages calculated at the prevailing rate. You should then reduce this amount by any wages and benefits that Ms. Summerlin received from other employment during that time that she would not otherwise have received.

Ms. Summerlin must prove her damages by a preponderance of the evidence. Your award must be based on evidence and not on speculation or guesswork. On the other hand, Ms. Summerlin need not prove the amount of her losses with mathematical precision, but only with as much certainty and accuracy as the circumstances permit. *Lowe v. Southmark Corp.*, 998 F.2d 335, 337 (5th Cir. 1993).

You are further instructed that Ms. Summerlin has a duty to mitigate her damages -- that is, Ms. Summerlin is required to make reasonable efforts under the circumstances to reduce her damages by seeking employment. It is Almost Family's burden to prove that Ms. Summerlin has failed to

mitigate. So, if Almost Family persuades you, by a preponderance of the evidence, that Ms.

Summerlin failed to make reasonable efforts to obtain substantially equivalent job opportunities

that were reasonably available to her, you must reduce the award of damages by the amount of

the wages that Ms. Summerlin reasonably would have earned if he had obtained those

opportunities.

In assessing damages, you must not consider attorney fees or the costs of litigating this case.

Attorney fees and costs, if relevant at all, are for the court and not the jury to determine.

Therefore, attorney fees and costs should play no part in your calculation of any damages.

Moreover, you may not award Ms. Summerlin damages for pain and suffering or emotional

distress and you may not consider punitive damages.

*Source of Instruction:  29 U.S.C. § 2617(a)(1)(A); Model Jury Instructions (Civil) Third Circuit*

*§ 10.4.1 (2009); Roberts v. Health Assoc., No. 07-3553-cv, 2009 U.S. App. LEXIS 1944, at \*3*

*(2d Cir. Feb. 3, 2009).*

## PROPOSED JURY INSTRUCTION NO. 5
## FMLA GOOD FAITH DEFENSE

If you find that Ms. Summerlin has proven her claim by a preponderance of the evidence, then

you must decide whether Almost Family acted in good faith.  You must find Almost Family

acted in good faith if it has proved that when it refused to offer to hire Ms. Summerlin to any of

the positions she applied, except for the part-time, per diem job, when she was cleared back to

work, Almost Family reasonably believed that its actions complied with the FMLA.

*8 CIR. CIVIL JURY INSTR. § 5.86 (2011)*

**PROPOSED JURY INSTRUCTION NO. 6**
**Elements of a Retaliation Claim Under Connecticut General Statutes § 31-290a**

In addition to her FMLA retaliation claim, Ms. Summerlin has alleged that Almost Family discriminated against her in violation of Connecticut General Statutes § 31-290a, which prohibits retaliation against an individual for filing a claim for workers' compensation benefits or otherwise exercising the rights afforded to her under the Connecticut Workers' Compensation Act.  Connecticut General Statutes § 31-290a provides:

"(a) No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, *or in any manner discriminate against* any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter."

In order to prevail on her claim under § 31-290a, Ms. Summerlin must prove by a preponderance of the evidence that Almost Family's refusal to hire her to any of the positions to which she applied when she was cleared back to work, except for the part-time, per diem job, was due to intentional discrimination based on her filing a claim for workers' compensation benefits.  Intentional discrimination is proved in this case if Ms. Summerlin demonstrates by a preponderance of the evidence that her filing a workers' compensation claim was a motivating factor for Almost Family's refusal to offer her employment when she was cleared to return to work even though other factors also motivated Almost Family's decision to not to offer Ms. Summerlin employment.  A "motivating factor" is a factor that made a difference in Almost Family's decision.

20

Ms. Summerlin does not have to prove that the filing of a workers' compensation claim was the sole or even the principal reason for the decision, as long as she proves that it was a determinative influence in the decision.  She may prove intentional discrimination directly by proving that her filing the workers' compensation claim motivated Almost Family's action in refusing to offer her employment or indirectly by proving that the reasons given by Almost Family for not hiring her were unworthy of belief.  If you find that Almost Family's stated reasons are not credible, then considering all the circumstances you may infer, although you are not required to infer, that the filing of the workers' compensation claim was a motivating factor in Almost Family's decision, even if it may not have been the only motivating factor.

It is not your role to second-guess Almost Family's business judgment.  As long as the filing of a workers' compensation claim was not a motivating factor that made a difference in its decisions, the fact that an employer's decision was incorrect, unfair, unwise or capricious, or even based on personal favoritism or animosity is irrelevant.

### PROPOSED JURY INSTRUCTION NO. 7
### Damages under Connecticut General Statutes § 31-290a

Section 31–290a(b) of the Connecticut General Statutes permits Ms. Summerlin, if she proves her claim of retaliation under the Connecticut Workers' Compensation Act, to recover "damages, including back pay and benefits, and emotional stress damages.  There is a difference between the damages that are permissible under the FMLA, on which I have previously instructed you, and the damages permissible under Section 31–290a(b) of the Connecticut General Statutes.  Unlike the FMLA, the state law allows you to award Ms. Summerlin compensatory damages for

21

any emotional stress which she may have suffered as a result Almost Family's alleged discriminatory conduct.  If you find that Ms. Summerlin was a victim of retaliation, she will then be entitled to money damages not only for loss wages and benefits, including front pay, but also for the pain, humiliation, disappointment, distress, anger or anguish he suffered and may continue to suffer as a result.  Ms. Summerlin must prove her right to compensatory damages by a preponderance of the evidence.  You must not speculate, guess, or conjecture as to the amount of damages, if any.  Also, you cannot award damages because of any sympathy toward Ms. Summerlin.  You may award compensatory damages only for injuries that Ms. Summerlin proves were caused by Almost Family's allegedly wrongful conduct.  Compensatory damages are damages for emotional pain, suffering, inconvenience, and mental anguish.  You may only award compensatory damages if you find these were caused by Almost Family's allegedly illegal action.

Ms. Summerlin has the burden of proving any compensatory damages by a preponderance of the evidence.  However, there is no specific measure to apply, and you must use your sound judgment and informed conscience.  No evidence of the monetary value of such intangible things as pain and suffering has been, or needs to be, introduced into evidence.  No exact standard exists for fixing the compensation to be awarded for these elements of damages. The damages that you award must be fair compensation — no more no less.  If Ms. Summerlin does not prove that she has experienced emotional distress because of Almost Family's conduct, then she cannot recover compensatory damages for emotional distress.  In considering the amount of monetary damages to which Ms. Summerlin may be entitled, you should consider the

nature, character, and seriousness of any emotional and mental distress which Ms. Summerlin reasonably felt. You may award emotional distress damages even if there were other factors in Ms. Summerlin's life that also caused her stress. Ms. Summerlin is competent to testify to the cause and nature of the emotional distress suffered.

Fixing an amount for an emotional distress award is not necessarily an easy task. You should be careful to base the award on the evidence you have heard and you must use the award to compensate Ms. Summerlin for the harm she has suffered. You should not use the award to punish Almost Family. The award need not be proved to a mathematical certainty. Use your best judgment in arriving at a fair, reasonable amount to compensate Ms. Summerlin in full for the emotional distress that you find he has suffered.

*Oakes v. New England Dairies, Inc.*, 219 Conn. 1, 591 A.2d 1261 (1991).


### PROPOSED INSTRUCTION NO. 8
### TAXATION

If you award Ms. Summerlin damages for her emotional distress and/or lost compensation, you should be aware that these damages are taxable as income under the law. *Norfolk & Western R. Co. v. Liepelt,* 444 U.S. 490, 497-8 (1980), and you are allowed to factor this consideration when making your award for damages.

(7)    <u>INTERROGATORIES FOR SPECIAL VERDICT FORMS</u>

I.    *FMLA - Retaliation*

1. Has the Ms. Summerlin proved by a preponderance of the evidence that her taking

    FMLA leave was a motivating factor in AFAM's decision not to offer her employment,

    except for a part time job, to the positions she applied?

    _____        _____
    Yes               No

*If the answer to Question No. 1 is "no," proceed to Question No. 6.  If the answer to Question*

*No. 1 is "yes," proceed to Question No. 2.*

2. Has Almost Family proved, by a preponderance of the evidence, that it would have made

    the same decision not to hire Ms. Summerlin even if Ms. Summerlin's taking FMLA

    leave played no role in the its decision not to hire Ms. Summerlin?

    _____        _____
    Yes               No

*If your answer to Question No. 2 is "no," proceed to Question No. 3.  If your answer to Question*

*No. 2 is "yes," proceed to Question No. 6.*

3. What damages do you award Ms. Summerlin to compensate her for lost pay and/or

    benefits, including back pay and benefits, front pay and benefits, and emotional stress

    damages that she suffered as a result of Almost Family's retaliation?

24

       a.  Back Pay and Benefits $ _____

       b.  Front Pay and Benefits $_____

       c.  Emotional Stress Damages $_____

       d.  Total Damages $_____

*Proceed to Question No. 4.*

4.  Has Almost Family proved by a preponderance of the evidence that Ms. Summerlin failed to mitigate her damages?

      _____      _____

      Yes          No

*If the answer to Question No. 4 is "no," proceed to Question 6.  If the answer to Question No.4 is "yes," proceed to Question No. 5.*

5.  In dollar amount, how much do you find that should be deducted from Ms. Summerlin's Back Pay and Benefits, and Front Pay and Benefits because of her failure to mitigate her damages?

      $_____

II.      *Retaliation – Connecticut General Statutes § 31-290a(b)*

6.  Has the Ms. Summerlin proved by a preponderance of the evidence that her filing a workers' compensation claim and/or exercising her rights under the Connecticut Workers' Compensation Act was a motivating factor in Almost Family's decision not to offer her employment, except for the per diem, part time job, to the positions she applied?

    _____        _____
    Yes             No

*If the answer to Question No. 6 is "no," proceed not further.  If the answer to Question No. 6 is "yes," proceed to Question No. 7.*

7.  Has Almost Family proved, by a preponderance of the evidence, that it would have made the same decision not to offer employment to Ms. Summerlin even if Ms. Summerlin's filing a workers' compensation claim and/or exercising her rights under the Connecticut Workers' Compensation Act had played no role in the its decision not to hire Ms. Summerlin ?

    _____        _____
    Yes             No

*If your answer to Question No. 7 is "no," proceed to Question No. 8.  If your answer to Question No. 7 is "yes," proceed no further.*

8.  What damages do you award Ms. Summerlin to compensate her for lost pay and/or benefits, including back pay and benefits, front pay and benefits, and emotional stress damages that she suffered as a result of Almost Family's retaliation?

26

       e.  Back Pay and Benefits $ _____

       f.  Front Pay and Benefits $_____

       g.  Emotional Stress Damages $_____

       h.  Total Damages $_____

*Proceed to Question No. 9.*

   III.   *Mitigation of Damages*

  9.  Has Almost Family proved by a preponderance of the evidence that Ms. Summerlin

      failed to mitigate her damages?

           _____     _____

     Yes        No

*If the answer to Question No. 9 is "no," proceed no further.  If the answer to Question No. 9 is*
*"yes," proceed to Question No. 10.*

  10. In dollar amount, how much do you find that should be deducted from Ms. Summerlin's

      Back Pay and Benefits, and Front Pay and Benefits because of her failure to mitigate her

      damages?

          $_____

DATED: **_____**                 _____

                                                        Foreman

THE PLAINTIFF – CONNIE SUE SUMMERLIN


BY:  /s/Thomas W. Bucci
Thomas W. Bucci, Esq.
Federal Bar No. ct07805
WILLINGER, WILLINGER & BUCCI, P.C.
855 Main Street
Bridgeport, CT 06604
Tel. No. (203) 366-3939
Fax No. (203) 337-4588
Email: thomasbucci@earthlink.net

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 11, 2015, a copy of foregoing *Plaintiff's Trial Memorandum* was filed electronically and served on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

PLAINTIFF – CONNIE SUE SUMMERLIN

By /s/<u>Thomas W. Bucci</u>
Thomas W. Bucci, Esq.
Federal Bar No. ct07805
WILLINGER, WILLINGER & BUCCI, P.C.
855 Main Street
Bridgeport, CT 06604
Tel. No. (203) 366-3939
Fax No. (203) 337-4588
Email thomasbucci@earthlink.net